## MARCHESE SISTERS EMBROIDERY CORPORATION v. GOTHAM SILK HOSIERY CO., Inc.

(District Court, S. D. New York.  February 14, 1921.)

**1. Patents ⬭81—Evidence held to show prior use of process for Inserting open work in fabrics.**

Evidence in a suit for infringement of a process of inserting open work in fabrics *held* to show prior public use of such process.

**2. Patents ⬭328—1,313,198, for process of inserting open work in fabrics, held invalid for prior public use.**

The Marchese patent, No. 1,313,198, for a process of inserting open work in fabrics, *held* invalid for prior public use.

Suit by the Marchese Sisters Embroidery Corporation against the Gotham Silk Hosiery Company, Inc., for infringement of all claims of letters patent No. 1,313,198, dated August 12, 1919, issued on application filed September 7, 1916, to Concettina Marchese and Antonietta Marchese for process of inserting open work in fabrics.  Bill dismissed.

Frackman & Robins, of New York City (James H. Griffin and Joseph H. Robins, both of New York City, of counsel), for plaintiff.

Darby & Darby, of New York City (Samuel E. Darby, Jr., of New York City, of counsel), for defendant.

MAYER, District Judge.  The patentees state:

"This invention is a method or process of producing open-work, lace, or embroidery patterns in such hosiery as is manufactured plain, or without such patterns or open-work portions. It has been the practice, when open-work hosiery is desired, to weave the open-work portions directly into the hosiery as the process of weaving or knitting progresses in the manufacture of the hosiery. This could only be done through the employment of a limited number of special attachments to hosiery legging machines during the knitting operation. The object of the invention is to provide a process whereby open-work designs may be applied to hosiery after said hosiery has been finished plain, and in such manner that the elasticity and durability of the hosiery are not impaired."

Typical claims are:

"1. The method of producing open work in fabrics which consists in producing (1) a run in a drop-stitch or knitted fabric; (2) taking the run at the opposite ends thereof to preclude said run from extending beyond predetermined limits; and (3) gathering the threads which extend across said run to form the open-work portion."

"3. The method of producing open work in drop-stitch fabrics which consists in producing a run in the fabric, encircling said run with stitching for

⬭For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the purpose of checking the run to preclude it from extending beyond prede-termined limits, and leaving the stitches which extend across the run intact."

The principal defenses are (1) prior use; (2) lack of invention in view of the prior art. The hosiery of the kind here considered has become important commercially because of fashion's decree. Hence the spirited controversy.

[1, 2] Arthur Marchese, a witness for plaintiff, thus clearly and concisely described the process of the patent:

"The open work is formed by cutting in part of the stocking; that is, by simply loosening or cutting a single thread and letting the thread, when cut, run to a certain extent as desired, and where they are desired, and by fastening around the cut point, and fastening the runs at the desired end, and then encircling the stitches so dropped by additional stitches all around, in the form or in the way desired to make any desired design."

Defendant produced as its principal witness on prior use Mrs. Elise Handschin. Mrs. Handschin was obviously a woman of refinement and intelligence, who impressed the court as a thoroughly trustworthy witness. She came to the United States from Switzerland in 1893 and started in the hosiery business in New York City in 1898. From what she learned in Switzerland, where, according to her, she was taught to pick up stitches and "make them together so that it did not show," she conceived "the idea of making those drop stitches in the hosiery." She further testified:

"I produced the first open work already in 1898, made some trials, but then the first ones in 1903, where I have the books and samples."

She was examined very fully, and carefully cross-examined, and at the conclusion of her testimony no doubt was left in the court's mind (1) that her process in all essential particulars was the same as that of the patent; and (2) that her work on and sale of so-called open-work stockings was well known long prior to 1916. She produced her original design book, whose contents she clearly explained, and original samples of stockings whose genuineness as to character and date of work thereon, or construction thereof, was established beyond a reasonable doubt.

It will not be profitable to discuss the testimony and the many exhibits in detail. It is enough to characterize the testimony as impressing the court as true. Her three witnesses, Miss Dingman, Mrs. Vormbaum, and Miss Ehrman, former employees, but no longer connected in business with her, satisfactorily corroborated her. They were simple women, unused to court proceedings, and testified in a manner characteristic of truthful witnesses. Naturally they differed in unimportant details—very often the best evidence of veracity. When, at times, they said that, if Mrs. Handschin stated that something was so, it must be so, they paid her unconsciously a high tribute.

Miss Mayer, while not pretending to be an expert, also corroborated Mrs. Hanschin in essential respects. This witness, obviously a very able woman and a truthful witness, has been the hosiery buyer for Lord & Taylor for about 26 years. She testified:

"Mrs. Handschin, as far as I could understand, they had been manufacturers, and her husband was in the banking business with the Iselins, and they

had reverses, and she had been working in her husband's factory in Europe, and they came to this country, where they had this factory, and Mr. Emery, of Emery & Beers, introduced us to one another, and told me, if I could give her some work, that they would like to have me do it; that is, Mr. Joseph H. Emery. They knew them in Europe, where they had an underwear business, and she knew a great deal about hosiery and underwear, because they are allied trades. And then we had at that time some stuff that came from the other side, some open-work stockings, came from either France or Germany, I do not know just where. They were very badly drop-stitched. They were simply terrible, and we did not know what to do with them; they were a great loss. It was a question what to do with them; we could not send them back, because that meant duty back and forth, so we thought to give them to some one, to some manufacturer or to Mrs. Handschin. Mrs. Handschin did not know whether she could do it; she had a place at Union Square; she had two girls I happened to see down there, Miss Dingman and then another girl. They were then very young girls. * * * We gave them to Mrs. Handschin, and she did the work so wonderfully, no one in the country could have done it, and I used to go to see her occasionally, and brought many styles to her; and we had some stockings that came from the other side, some embroidery, and open-work stockings we wanted on them. We had some orders that we could not get from France on time. I brought the samples down, and she took the work, and she did the work so well, I gave her the first pair of stockings to do at that time, done in this way.

"Q. You refer to open-work stockings? A. That was embroidered; she did this, and she did more work for us; that was in 1898, and then I saw them experimenting with open-work stockings at that time. They did not make any for us; but it was four or five years later that she made some, that we used for one of our annual December sales, which we used in quantities.

"Q. Did you, as a buyer for Lord & Taylor, have some open work done on stockings by Mrs. Handschin? A. Not as early as that?

"Q. When did you first have that done by her? A. I should judge about four or five years later; I could not tell you just when.

"Q. Four or five years after 1898? A. Yes.

"The Court: Q. Perhaps in or about 1903? A. I should judge so; I should judge that it was about that time. We used them in quantities for our annual December sale."

Catalogues or advertisements, 1908–1912, of Lord & Taylor (Exhibits M, N, and Q), were produced, which Miss Mayer was satisfied illustrated Mrs. Handschin's work. She also produced perforation designs given to her by Mrs. Handschin for reordering purposes. In brief, so satisfactorily was the prior public use established that further discussion (inter alia, the prior art) is unnecessary.

Bill dismissed, with costs.